Case number 15-3077, United States of America v. Rodrigo Tovar Pupo, also known as Jorge Forte, also known as Para Tovar Columbia Appellant. Ms. Davis for the appellant, Mr. Romano for the appellate. Ms. Davis, good morning. Before you start, let me just make sure the record reflects that Judge Randolph will be considering this case on the tape. Go ahead. Good morning, Your Honors. Mary Davis on behalf of Mr. Tovar Pupo. With the Court's permission, I'd like to save three minutes for rebuttal. The issue I'd like to address this morning is that the District Court abused its discretion when it denied the appellant's motion to withdraw the guilty plea. As this Court is aware, Mr. Tovar Pupo sought to withdraw the guilty plea prior to sentencing. Therefore, according to the rules, such motions are to be liberally granted and permitted for any fair and just reason. In this case, the District Court focused primarily on the Rule 11 colloquy, and while at the same time basically ignoring a lot of what happened and what the witnesses testified to during the evidentiary hearing on the motion to withdraw the plea. As far as the legal standard goes, though, if there is no violation of Rule 11, then isn't that, I guess, make it a higher burden for you under our case law for even a pre-sentencing motion to withdraw? But I think on the facts of this case, the fact that there was what appeared to be a straightforward Rule 11 colloquy, there were certain instances within that colloquy where the defendant made certain conditions, I would say, to his answers. He would say, yes, the drugs were imported, but that was a result of my raising taxes. And Mr. Tovar Pupo consistently throughout the case maintained that his role in this political agenda, because his role was to oversee people, to collect the taxes. He did not gain wealth from the taxes. The taxes were used for his political cause. He did not supervise anyone. But I guess what I'm trying to get at is, are you arguing this morning that there was a Rule 11 violation? I believe that there was a Rule 11 violation, although below it was conceded that there was no Rule 11 violation. So I think what this court can do is to look at the factors I was just mentioning regarding what happened during the colloquy and look at the testimony, because I believe you can't have, as long as there's a Rule 11 colloquy that doesn't have any blatant mistakes, I don't think that that, I think that would kind of get rid of the whole purpose of the rule, saying that there should be, that these motions should be liberally granted. Almost never is there a problem with a Rule 11 colloquy, because judges go straightforward through everything, through all the questions, through all the conditions of the plea. There's very seldom is there any problem with a Rule 11 colloquy. So in order to enforce what the rule is saying regarding liberally granting these motions, I think the court has to look beyond just the Rule 11 colloquy. Otherwise, there would be basically no purpose in having an evidentiary hearing if the testimony at the evidentiary hearing is not going to be considered along with the Rule 11 colloquy. But I guess what I'd like to hone in on here is what do you believe was the, if we were to assume that we can consider the argument that there was a violation of Rule 11, what would, what is, what was the violation? Again, I don't think there's an actual violation of Rule 11. I think there is, I think the judge did everything the judge was supposed to do in regard to going through everything. I think the problem, again, is that Mr. Tora Pugo was not clear in his answers to the judge. Again, he was premising his answers, his agreement. He agreed with what the judge was saying, but his agreement was premised on his saying that that was all part of collecting the taxes, that's what I did. And that also leads to the argument that we believe that Mr. Tora Pugo had a viable claim of innocence because he never, never really agreed that he had any involvement in the drug trafficking. He basically said he collected taxes, and the taxes came from both legitimate and illegitimate sources. So Mr. Tora Pugo, he didn't tell anyone what to do other than collect the taxes. He, there's no evidence he ever saw any drugs. There's no evidence he, in fact, the plea agreement. Well, he admitted that he was aware. He was aware, that's right, he was aware. Yes, he was certainly aware of how the drug trafficking worked. Right. And that he was aware that this was facilitated, right? I, exactly, but I don't think that shows that he had the specific intent to do, for the drugs to be imported into the United States. In fact, the Statement of Facts says, in summary, defendant's activities leading the organization, the defendant came to learn about the drug trafficking activities. I mean, so even the Statement of Facts doesn't clearly say that he was actively involved in the conspiracy that resulted in drugs being imported, exported to the United States. If we believe that we have to find that there was actual ineffective assistance of counsel in order to find taint, in order to find that there was an abuse of discretion, where was the ineffective assistance of counsel? Well, as the district court found, there was actual conflict, so therefore prejudice is presumed. And so then the court had to consider whether counsel's conflict adversely affected the case. And I think in this case, it did because, number one, Mr. Perez was not going to take Mr. Tovar-Pupo to trial. He also had two other clients that he said were willing to come in and testify against Mr. Tovar-Pupo. What about the role of Ms. Shaner, though? Wouldn't she be available to take the case to trial if Mr. Pupo had decided that that's what he wanted to do? I think there was some discussion concerning that. I don't know if there was any final agreement. Even Ms. Shaner's testimony during the evidentiary hearing made clear that she believed that Mr. Tovar-Pupo did not want to plead guilty. And that is something that he maintained from the beginning and all the way through to the end. But I guess what I want to zero in on is I don't know that Judge Walton made a finding of this. I don't recall seeing it in the record. But whereas Mr. Perez apparently was clear that he would not take the case to trial, and that was kind of understood as part of his retention, I don't believe that there was any similar limitation on the retention of Ms. Shaner, right? I don't believe there was. I believe there was discussion concerning it. But my understanding is that as Ms. Shaner was appointed in the beginning and then was basically serving as local counsel, I don't know if Ms. Shaner, I don't recall, but I don't know if Ms. Shaner said she would be prepared to take the case to trial. I don't know if that's true. And I think we also have to keep in mind is that Mr. Tovar-Pupo wanted retained counsel, but he wanted his retained counsel to take him to trial. If that makes any sense. I think that would be. So I don't think that there's enough in this record for this court to say that Ms. Shaner would have been ready and able to try the case. I just don't think those facts are in the record. And if there's no further questions, I will save my one minute for rebuttal. All right. Thank you. Mr. Romano? Good morning, and may it please the Court. John Alex Romano on behalf of the United States. The District Court's denial of Mr. Tovar-Pupo's motion to withdraw his guilty plea was not an abuse of discretion, and we ask that the Court affirm that ruling. Each relevant factor cut against withdrawal of the guilty plea. First, his guilty plea was not tainted. As my opponent conceded, in the District Court, Mr. Tovar-Pupo, in seeking to withdraw his guilty plea, did not allege a Rule 11 violation. Rather, his theory of taint was that his attorney, Joaquin Perez, one of his attorneys, had an actual conflict of interest based on Mr. Perez's concurrent representation of two cooperating defendants. But even if Mr. Perez did have an actual conflict of interest — Are you actually contesting that there was a — No. For purposes of the appeal, Your Honor, we are not disputing that there was an actual conflict of interest. What we are arguing, though, is that that conflict of interest did not adversely affect Mr. Perez's performance, his representation of Mr. Tovar-Pupo in connection with the guilty plea. And the Court can begin by looking first at Mr. Tovar-Pupo's sworn statements during the plea colloquy. Are we supposed to look only at whether it was ineffective assistance of counsel with respect to the negotiation of the guilty plea? Or can we look at whether there was ineffective assistance of counsel, more broadly speaking, with respect to whether there was sufficient preparation of the defense in general? Your Honor, I don't believe the Court can look at that because that's certainly not an argument that has been raised. I don't believe it was raised in the district court or on appeal. That is, that Tovar-Pupo's defense team did not adequately prepare the case for trial. The claim that Tovar-Pupo made as to how the conflict of interest affected Perez's representation was that Perez didn't want to go to trial and that he effectively coerced Mr. Tovar-Pupo into pleading guilty. That was the allegation. So I think the Court is limited in looking at what the actual arguments were that were raised. And the district court did consider that argument, in fact, and it rejected it. And that appears in footnote 11 of the district court's decision. And there was ample record evidence supporting the district court's rejection of this claim that Mr. Tovar-Pupo's guilty plea was coerced. The Court can look at the Rule 11 statements that Mr. Tovar-Pupo made under oath, where, for example, he confirms that no one threatened, pressured, or coerced him into pleading guilty. And he confirmed that it was in his best interest to plead guilty. The Court can look at evidence that was developed at the hearing on the motion to withdraw the guilty plea, including the testimony of Conflict Free Counsel Heather Shainer. And she testified, among other things, that she reviewed the plea documents carefully with Mr. Tovar-Pupo, that Mr. Tovar-Pupo agreed that it was in his best interest to plead guilty. And she testified that it was her belief that his decision to plead guilty was voluntary. This is at Joint Appendix 187 to 193. But she also testified that there was a lot of disagreement about that, and that even it took this kind of intervention with the prosecutors, ultimately, to kind of get this over the finish line, so to speak, right? I mean, there was a meeting with the prosecutors where it went over the factual proffer? Your Honor, yes. And to be clear, she did testify that Tovar-Pupo didn't want to plead guilty, but that he did come to see that it was in his best interest to plead guilty. I think many defendants don't want to ultimately plead guilty and be convicted of a crime. But the testimony, as I read the transcript by Heather Shainer, was that he agreed that it was in his best interest to plead guilty. And as to that meeting with prosecutors, no one corroborated Tovar-Pupo's testimony that he was, you know, the gist of Tovar-Pupo's testimony was that during that meeting with prosecutors, he was browbeaten into pleading guilty and that he said, I'll do it if everyone can agree that this is a lie. That was not corroborated. And the district court had ample grounds under the clear error standard for rejecting Tovar-Pupo's claim. Among other things, the court could also look at a hearing exhibit that the government introduced. This is Exhibit 5, which is at Joint Appendix 365. And this is a note that Mr. Tovar-Pupo writes to Attorney Perez after he has pleaded guilty. And the gist of the note is to praise Mr. Perez's skills as a negotiator, and Tovar-Pupo hopes that someday Mr. Perez will consider him, Tovar-Pupo, a friend. That's not the type of note that is written by a defendant who has been pressured into pleading guilty. It's not, but let me just tell you, I guess perhaps I'm infected by my past life as a public defender. You know, what really smells in this case is that you had a lawyer who had a clear conflict from the beginning and whose role it appears to be from the beginning was to get Mr. Pupo to plead guilty because he could not take the case to trial because his two other clients would have been testifying against Mr. Pupo had that occurred. So, I mean, in a normal case, if we were to hear that the defense lawyer had no interest in taking the case to trial and saw his or her job is only to get the defendant to plead guilty, and if the defendant pled guilty but then before sentencing said, you know, all my lawyer wanted me to do from the beginning was to plead guilty and I'd really like to take the case to trial and, you know, take my chances, why wouldn't we say that that's a fair and just reason under Rule 11 to let the defendant withdraw his guilty plea and take his chances? You're wrong because I think the law is that while a request to withdraw the plea that is made before sentencing can be deliberately granted for a fair and just reason, I think the law of the circuit is also clear that when a district court denies that request, the defendant has a heavy burden in getting that reversed on appeal. And among other things that the court could look at, and this is something that the district court relied on and I believe it's in footnote 11, is some statements by Tovar Pupo himself leading up to the guilty plea, which suggested that he wasn't really intent on going to trial. There's an e-mail I believe that the district court cited where Tovar Pupo is sending back corrections to the statement of facts to Perez where he says, let's see if we can work out a compromise so that I can not have to go to trial. So I think under the clear error standard, which is what applies to the district court's finding that Mr. Tovar Pupo was not pressured against his will to plead guilty, the district court had an ample basis for concluding that this was Tovar Pupo's voluntary decision to plead guilty. But we review whether there was ineffective assistance to know. I believe the standard is, Your Honor, the way that he would have to show ineffective assistance of counsel would be to show an actual conflict of interest, which isn't being disputed by the government here. But there is a factual finding as to whether that actual conflict affected Mr. Perez's performance, his representation of Tovar Pupo. And the argument by Tovar Pupo is that he was coerced into pleading guilty. That's a factual finding, whether he was coerced or not. And something that the district court, we submit after holding an evidentiary hearing that lasted, I mean, it was continued, but it lasted almost five full days, I believe. We submit that the district court was best poised to evaluate the evidence and to make what was in some ways also a credibility determination as to the witnesses who were testifying before the court. I'm happy to continue answering questions on taint. I know my opponent also addressed the issue of whether or not Mr. Tovar Pupo has a viable claim of innocence. Well, how are we supposed to, on taint, how are we supposed to weigh facts that came out at the hearing that appear to not be contested, like the fact that Mr. Perez didn't even have an engagement, written engagement letter, with Mr. Perez, I'm sorry, with Mr. Pupo, and couldn't remember what his fee was, or the terms of his fee, kind of basic things that go to the core of the representation and that are governed by the D.C. rules of professional ethics. I mean, there's a lot about just the basic mechanics of this representation that seem to be troublesome. I understand Your Honor's concerns, and that lack of engagement letter isn't something that my counsel raised, so we didn't address it in our brief, but I would say that the court could have some comfort in the fact that Mr. Tovar Pupo was also represented by conflict-free counsel, and this court, in the right case, looked at the presence of conflict-free counsel in an actual conflict of interest case, and that was one factor it cited in the course of affirming the district court's denial of the motion to withdraw the guilty plea. Ms. Shaner's signature, for example, appears on the plea paperwork. She did testify that while she may not have been lead counsel, she was present, and she did participate in the process of discussing the decision to plead guilty. What did Ms. Shaner testify was her role as far as if the case had gone to trial? Did she testify at all about her willingness or ability to try the case? I'm not recalling offhand, Your Honor. I don't believe that a testimony got into that area. I'm not calling for certain, but I don't believe that those questions were posed during the hearing as to would you have stayed on  But, I mean, I guess what I'm getting at here is if this defendant believed that if he didn't plead guilty, he was, in effect, not really going to have a representation or decent representation because he'd obviously lose Mr. Perez, and it's not clear what Ms. Shaner's role was going to be unless she was ready to try the case. Doesn't that factor into whether he felt like he really had a choice in the matter? I don't think so, Your Honor, for this reason. I mean, there is certainly record evidence, and this came out during the evidentiary hearing, the testimony that Mr. Tovar Prupo is a very bright individual. He has a forceful personality. He certainly knows how to raise issues. He's not the type of person who is going to be pressured into pleading guilty. For example, despite being represented on appeal by counsel, he requested and received authorization to file pro se supplemental briefs, making his own claims. So I think the record shows that he's, Mr. Tovar Prupo, is not the type of person who would just sit by and not ask questions or raise concerns. In fact, he had questions about who would be representing him if he went to trial or if he wanted a new lawyer. He did obtain new counsel in connection with before filing the motion to withdraw his guilty plea. All right. I see that my time has expired. If the Court has any questions about any other aspects of the motion to withdraw the guilty plea, I'm happy to answer them or just to rest on the government's brief. All right. Thank you. Thank you. Ms. Davis has one minute. Okay. Go ahead. I'll be very brief, probably not even one minute. But I would just like to respond to the argument that Mr. Tovar Prupo was a very intelligent and forceful person. But at the same time, I think this Court has to understand that Mr. Tovar Prupo was brought to the United States from Colombia. He did not speak the language. He was counting on Mr. Perez. He retained Mr. Perez. He was counting on him to do what was right for him. And I don't think that it's really right for the government to say that Mr. Tovar Prupo, because he's an intelligent man, should have said something during the plea colloquy. And I think this Court, I think it's the Roberts case, I think this Court also recognized that Rule 11 colloquies are really not as much as there may have to be, that there's always concerns about it. Mr. Tovar Prupo testified during the evidentiary hearing that he, in fact, lied during the plea agreement and he didn't know what to do. He had been told not to raise his hand or discuss anything with the Court. So I think these are all factors that this Court can consider when deciding this case. And if there's no further questions, I would ask that the District Court's decision be reversed. All right. Thank you. Thank you.
judges: Henderson, Wilkins, Randolph